J-S47010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ODDELL QUARN CANNON | : | |
| | : | |
| Appellant | : | No. 14 EDA 2024 |

Appeal from the PCRA Order Entered November 28, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0003756-2006

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY SULLIVAN, J.:         **FILED NOVEMBER 6, 2025**

Oddell Quarn Cannon ("Cannon") appeals from the dismissal of his untimely fourth petition under the Post Conviction Relief Act ("PCRA"). On appeal, Cannon claims the existence of newly discovered facts. We affirm.

The facts relevant to Cannon's appeal of the denial of his PCRA petition are as follows: On April 1, 2006, at approximately 2:00 a.m., Donte Carter ("Carter") pulled up next to a car driven by Cannon's brother, Jonas Suber ("Jonas Suber"), in which Marquise James ("James") and Jonathan Thompson ("Thompson") rode. Carter's passenger, Duron Peoples ("Peoples"), lowered his window and fired one to two shots which hit Jonas Suber, his rival for the affections of the same woman. After the shooting, Thompson placed a Nextel

direct connect call[1] to Cannon, and he, James, and Jonas Suber drove to an alley behind Jonas Suber's house. Cannon contacted his cousins, Randy Suber ("Randy Suber") and Richard Legree, Jr. ("Legree"), to take him to Jonas Suber's house. **See** Trial Court Opinion, 3/29/11, at 2-3 (paragraph spacing added, record citations omitted), adopted by this Court, **Commonwealth v. Cannon**, (Pa. Super., October 26, 2011) (unpublished memorandum).

On the way, Randy Suber got out at the corner of Pennsylvania Avenue; Cannon directed him to go to the Elks Club, frequented by Brian Keith Brown ("Brown"), Peoples' friend. Legree and Cannon went to Jonas Suber's house and met with Jonas Suber, Thompson, James, T.J. Gardner ("Gardner"), Rahlik Gore ("Gore"), Josh McMillan ("McMillan"), and Edgar Barber ("Barber"). James took Jonas Suber to the hospital; Cannon and the others plotted to retaliate against Peoples by attacking Brown. **See id**.

Members of the group stationed themselves at different places in the vicinity of the Elks Club, where Randy Suber had seen Brown. Gardner, who had agreed to shoot Brown at Cannon's request, went with McMillan to Seventh Street. Thompson and Legree circled the block. Gore and Cannon went to the area together. **See id**.

_____

[1] The trial evidence included records and testimony regarding "Direct Connect" or "Chirp" phone calls which took place between the people involved that night. "Direct Connect" refers to a walkie-talkie-like feature Nextel phones formerly had which allowed users to talk to each other without placing a phone call.

As Brown left the Elks Club, Randy Suber sent a direct connect "chirp" to Cannon, telling him Brown was leaving with another man.  As Brown and the other man walked on Merchant Street, Gardner approached, drew a gun, and shot Brown repeatedly, in the view of Peter Hamrick ("Hamrick"), who was parked in his van.  Panicked, Hamrick drove from the scene.  When he got out of his car, Hamrick told Barber he saw Gardner shoot Brown.  ***See id***.

Barber and Hamrick discussed the shooting.  Cannon and Gore joined them and Hamrick again told the story of Gardner shooting Brown.  Police vehicles began to swarm the area, and the four men lay on the porch to avoid detection.  Cannon received a direct connect call from McMillan who told him, "[I]t's taken care of."  Cannon asked where the gun was and told McMillan and Gardner to "be safe" and "stay low."  After the call, Cannon looked over at Hamrick and told him, "[Y]ou know what it is[,] boy."  ***See id***.

A few weeks after the shooting of the victim, Hamrick went to a barber shop Cannon owned.  He told Cannon he had received a Grand Jury subpoena.  Cannon called Gardner to join them.  Gardner told Hamrick, "[D]on't say anything," and "[Y]ou don't know anything about it," as Cannon and Gore stood with him.  ***See id***.

At trial, a jury convicted Cannon of third-degree murder and conspiracy to commit aggravated assault.  The court imposed an aggregate sentence of twenty-five to fifty years.  This Court affirmed Cannon's judgment of sentence.

*See id*. Cannon did not petition for allowance of appeal, making his sentence final on November 25, 2011.

Cannon filed his first PCRA petition in May 2012. Counsel was appointed and filed an amended petition. In September 2014, the PCRA court dismissed the petition. On appeal, this Court remanded for the PCRA court to conduct a **Grazier**[2] hearing on Cannon's request to represent himself. The PCRA court granted Cannon the right to represent himself and he raised seven issues on appeal. This Court affirmed, rejecting, *inter alia*, Cannon's claims that trial counsel was ineffective for: 1) seeking to admit excluded testimony from Pittman and Rachelle Pinder, 2) failing to investigate and present testimony from Gardner, Kahil Raison, and Barber, and 3) operating under a conflict of interest. This Court rejected Cannon's claims and affirmed the denial of his petition. **See Commonwealth v. Cannon**, 181 A.3d 1201 (Pa. Super. 2017) (unpublished memorandum). The Supreme Court denied Cannon's petition for allowance of appeal. **See Commonwealth v. Cannon**, 194 A.3d 559 (Pa. 2018).

Cannon filed a second PCRA petition in October 2018, which the trial court denied in May 2019. Cannon filed a *nunc pro tunc* petition for writ of *habeas corpus* in March 2019, asserting Randy Suber had recanted his trial testimony. The PCRA court analyzed Cannon's petition as a third PCRA petition

_____

[2] **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

- 4 -

and dismissed the petition in June 2019. This Court found Cannon's petition untimely and affirmed the denial of relief. **See Commonwealth v. Cannon**, 2019 WL 6999943 (Pa. Super. 2019) (unpublished memorandum).

Cannon filed the instant PCRA petition, his fourth, in April 2020, asserting his entitlement to time credit, after-discovered evidence in the form of an affidavit from Gardner, and the trial court's failure to merge his sentences. In May 2021, he filed a memorandum of law asserting the additional claim of newly discovered facts in the form of affidavits from Steve Pugh and Syretta Pittman. Thomas F. Burke, Esquire ("Attorney Burke"), entered his appearance[3] and filed amended PCRA petitions, notably supplemental petitions in October 2021, January 2022, and December 2022. The PCRA court issued a Rule 907 notice of intent to dismiss the petition, stating Cannon had waived the claims in his April 2020 petition. **See** Notice of Intent to Dismiss PCRA Petition, 5/15/23. Samuel C. Stretton, Esquire ("Attorney Stretton"), entered his appearance. The PCRA court granted Attorney Burke's petition to withdraw and in November 2023, dismissed Cannon's petition. A *pro se* notice of appeal was filed and Attorney Stretton filed a Rule 1925(b) statement asserting, *inter alia*, Attorney Burke's ineffective assistance. **See** Cannon's Rule 1925(b) statement, 1/10/24. The instant PCRA court assumed responsibility for the case upon the prior PCRA

_____

[3] Attorney Burke was also trial counsel in this case.

court's retirement and affirmed the dismissal of the majority of Cannon's claims but recommended, in light of Cannon's **Bradley**[4] claim, the case be remanded for the court to conduct a hearing on the alleged ineffectiveness of Attorney Burke.

On appeal, Cannon presents the following issues for our review:[5]

> 1) Should the case be remanded to the Court of Common Pleas, as requested by the Honorable Allison Bell Royer in her Opinion . . . , on the issue of [Attorney Burke's] ineffectiveness and failure to present timely after-discovered evidence? Should the case be remanded to allow [Attorney] Stretton the opportunity to develop the issue of newly discovered evidence of the phone records of [] Gore which would impeach a Commonwealth key witness? Further, should the remand be allowed since [Attorney] Stretton was unable to file the newly discovered evidence previously since the Common Pleas Court did not have jurisdiction because the case was on appeal and when the case was remanded, the [PCRA court] again denied the PCRA [petition] and [] Cannon took an immediate *pro se* Appeal placing the case back in the Superior Court and removing jurisdiction to file the after discovered evidence?
>
> A) Did [the PCRA court] err in dismissing the case before allowing additional evidence?
>
> B) Did [the PCRA court] err in dismissing the case without allowing the opportunity to file the phone records which would have impeached the testimony of key witnesses []Gore and Detective Campbell's testimony since Cannon contends those records were not provided to the defense?

---

[4] **See Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021).

[5] Cannon's Statement of Questions Involved is nearly three pages long. **See** Cannon's Brief at 4-6. We note with displeasure counsel's clear violation of Pa.R.A.P. 2116(a), which provides: "[t]he statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail."

C) Did [the PCRA court] err since [] Cannon now had the newly discovered evidence that would prove that there was a false admission in the Affidavit of Probable Cause and false testimony at the trial by a key Commonwealth witness? Was there a ***Brady*** violation by the Commonwealth not providing the material (phone records) to him or his counsel and also in violation of the Rules of Criminal Procedure, Rule 573?

D) Did [the PCRA court] err and abuse [its] discretion when [it] ruled that the Petitioner did not exercise due diligence and should the case now be remanded so that [] Cannon can present the newly discovered evidence?

E) Was [] Cannon's trial counsel ineffective and did he essentially abandon [] Cannon's claims that were raised in the original PCRA Petition and the Amendments thereto? Was his PCRA counsel ineffective for not raising supplements to [] Cannon's PCRA Petition and for not pursuing the PCRA Petition and supplements? Should the case be remanded on this ineffectiveness assistance of counsel issue? Was his trial counsel ineffective for not doing a pre-trial investigation and not inspecting the Commonwealth's Exhibit "121" before it was admitted, since that would have demonstrated improper and false testimony of a key Commonwealth witness at trial? Should [] Cannon's PCRA Petition and amendments [have] been granted?

Canon's brief, at 4-6.

Notwithstanding his lengthy statement of questions presented, Cannon asserts in a single issue that the case should be remanded to the PCRA court for an evidentiary hearing on the alleged ineffectiveness of Attorney Burke, Cannon's fourth PCRA counsel and his trial counsel, and because of newly discovered facts of phone records, Commonwealth's Exhibit 121, that refute Gore's testimony he received a phone call from Cannon around the time of the murder. ***See*** Cannon's Brief at 24-26.

Cannon's claim implicates the jurisdictional timeliness requirements of the PCRA.

Our standard of review of an order dismissing a PCRA petition is well settled:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018) (internal citations and quotation marks omitted). A PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 177 A.3d 136, 144–45 (Pa. 2018). Further, "it is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record." *Id*. at 145 (internal citation omitted).

We must initially determine whether the PCRA court had jurisdiction to adjudicate Cannon's fourth PCRA petition. Under the PCRA, any petition "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. *See Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010). Pennsylvania courts may nevertheless consider an untimely PCRA petition if

- 8 -

the petitioner can plead and prove one of three exceptions set forth in section 9545(b)(1)(i)-(iii).

Cannon's judgment of sentence became final on November 25, 2011, when the time to file a petition for allowance of appeal expired. *See* 42 Pa.C.S.A. § 9545(b)(3) (providing that "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review"); Pa.R.A.P. 1113(a) (providing that petition for allowance of appeal shall be filed within thirty days of the entry of the Superior Court's order). Accordingly, Cannon had until November 25, 2012, to file a timely PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1). Cannon's serial PCRA petition, filed in April 2020, is facially untimely.

Cannon suggests his claim meets the requirements of the newly discovered facts exception to the PCRA's time-bar. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii);[6] Cannon's Brief at 24-26. It is an appellant's burden to plead and offer to prove in the PCRA petition itself that one of the above-enumerated exceptions applies. *See Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1268 (Pa. 2008). Additionally, to establish a timeliness exception, a petitioner must also demonstrate he raised his claim within one year of the time his

_____

[6] This exception applies when "the facts upon which the claim is predicated were ***unknown*** to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S.A. § 9545(b)(1)(ii). (emphasis added).

claim could have been presented with the exercise of due diligence. *See* 42 Pa.C.S.A. § 9545(b)(2); *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015).[7]

Although Cannon did not assert Gore's phone records constituted newly discovered facts in his *pro se* PCRA petition, *see* Cannon's Fourth PCRA Petition, 4/3/20, Attorney Burke asserted in the third of his three Amended PCRA Petitions that Gore's phone number was not disclosed before or during trial and with that number and the related phone records, counsel could have discredited Gore's trial testimony he had a phone conversation with Cannon around the time of the murder. *See* Amended PCRA Petition, 12/13/22, at 5-6.

The prior PCRA court rejected this claim. *See* Notice of Intent to Dismiss PCRA Petition, 5/15/23, at n.3 (adopted by the PCRA court in its order dismissing Cannon's PCRA Petition, 11/28/23, at 1 n.3.). It found Cannon was aware of Gore's phone number at trial in 2010; Cannon failed to exercise due diligence in raising his claim because he could have obtained the Gore's phone records prior to 2023, or used his own phone records to determine the existence of a call with Gore; and Cannon failed to demonstrate the existence

---

[7] *Brown* was decided under a former version of the statute which accorded a petitioner 60 days, rather than one year, to raise his claim with the exercise of due diligence.

of newly discovered facts because he could have used a phone other than his own to call Gore around the time of the killing. *See id*. at n.3.[8]

The PCRA court properly ruled for the reasons the court cited and additionally because the trial record demonstrates Cannon's phone records, Exhibit 121, were admitted at trial and Cannon's trial counsel explicitly stipulated, "There is no conversation between my client and [ ] Gore on any of those phone records." N.T. 5/21/10, at 108. The instant PCRA court also acknowledges Cannon failed to prove due diligence regarding Gore's telephone number and the records. *See* PCRA Court Opinion, 3/18/24, at 10-11. Plainly, Cannon fails to demonstrate the requisite due diligence concerning Gore's phone number, Gore's phone records, or his own phone records, and his newly discovered facts claim fails. *See* 42 Pa.C.S.A. § 9545(b)(2); *Brown*, 111 A.3d at 176. *See also Commonwealth v. Breakiron*, 781 A.2d 94, 98 (Pa. 2001) (rejecting an appellant's attempt to invoke section 9545(b)(1)(ii) because he failed to offer any evidence he exercised due diligence in obtaining facts upon which his claim was based).

Cannon's other stated basis for requesting relief is Attorney Burke's alleged ineffectiveness in failing to raise the issue of the phone records, "which were not provided by the Commonwealth at trial to him." Cannon's Brief at 30, 31-37.

---

[8] The PCRA court's relevant discussion appears at p. 10 of its Notice to Dismiss.

In **Commonwealth v. Bradley**, 261 A.3d 381, 401 (Pa. 2021), the Supreme Court held a petitioner may raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if that first opportunity arose on appeal. However, **Bradley** does not provide an exception to the PCRA's time bar. **See Commonwealth v. Balestier-Marrero**, 314 A.3d 549, 556 (Pa. Super. 2024). As we explicitly stated in **Commonwealth v. Stahl**, 292 A.3d 1130, 1336 (Pa. Super. 2023), "Nothing in **Bradley** creates a right to file a second PCRA petition outside of the PCRA's one-year time limit as a method of raising ineffectiveness of PCRA counsel or permits recognition of such a right."

The PCRA court, which was assigned to this case after the former PCRA court dismissed Cannon's fourth PCRA petition, found **Bradley** permits Cannon to assert Attorney Burke's ineffective assistance as PCRA counsel for Cannon's fourth PCRA. Notably, the PCRA court did not make this finding regarding Gore's phone number; it found Cannon failed to exercise due diligence with regard to that claim. **See** PCRA Court Opinion, 3/18/24, at 11-12. The PCRA court requested we remand the case for the limited purpose of holding a hearing on Attorney Burke's alleged ineffectiveness regarding the fourth PCRA petition solely with regard to claims unrelated to Gore's phone records or Cannon's. **See** PCRA Court Opinion, 3/18/24, at 12.

The PCRA court's request for a remand impermissibly seeks an expansion of **Bradley** to allow consideration of Attorney Burke's

ineffectiveness regarding Cannon's fourth PCRA petition.[9] As discussed, **Bradley** does not provide an exception to the time bar. **See Commonwealth v. Balestier-Marrero**, 314 A.3d at 556; **Stahl**, 292 A.3d 1130, 1336 (Pa. Super. 2023). Accordingly, we will not remand for a hearing on a time-barred claim.[10]

For the foregoing reasons, we affirm the dismissal of Cannon's fourth PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/6/2025

---

[9] Plainly, Cannon cannot litigate any claim relating to Attorney Burke's **trial** conduct on a fourth PCRA petition. Moreover, as discussed at n.10, the PCRA court determined there is no newly discovered fact so any ineffectiveness regarding that alleged evidence would fail regardless.

[10] We also note the PCRA court rejected any claim relating to Gore's phone number and suggested remand on matters unrelated to Cannon's claim on appeal, so even if **Bradley** did apply, it would not entitle Cannon to relief.